UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE THOMAS,

                    Plaintiff,

                                                    Case No. 15-11344
          v.                                        Hon. Terrence G. Berg

MONROE COUNTY
SHERIFF'S DEPARTMENT,

                    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DKT. 10)**

## I.  Introduction

This is a pregnancy discrimination case. Plaintiff Christine Thomas alleges that

Defendant Monroe County Sheriff's Department did not re-hire her to the position

of Deputy Sheriff because she was pregnant. Defendant has moved for summary

judgment under Federal Rule of Civil Procedure 56. Plaintiff opposes the motion.

Because there are genuine issues of material fact concerning whether there is a

nexus between Plaintiff's pregnancy and Defendant's decision not to rehire her, and

whether Defendant's proffered non-discriminatory reasons for not rehiring her are

pretextual, Defendant's motion is **DENIED**.

## II.   Factual and Procedural History

Defendant hired Plaintiff as a Deputy Sheriff on Halloween of 2006. Dkt. 10,

¶ 1. Plaintiff served as a road patrol Deputy, and her performance in that position

had both peaks and valleys. She received multiple outstanding evaluations, but also

had trouble with report writing, keeping track of evidence, and investigating cases thoroughly. Dkt. 11 ¶ ¶ 80-83; Dkt. 10 ¶ ¶ 21, 30, 31, 36-42.

In December of 2010, budget cuts forced Defendant to lay off a number of Deputies, including Plaintiff. Dkt. 10, ¶ 2. Plaintiff went to work for Defendant in another capacity, as a Corrections Officer. *Id.* During her time with Corrections, Plaintiff talked to people in the Sheriff's Department about returning to road patrol if the opportunity arose. Sometime in 2012, she spoke with then-Major Dale Malone about going to work for the Dundee Police Department for a few hours each week in order to maintain her certification. Dkt. 11, Ex. 1, pp. 38-42. Malone told her that if she did not go to Dundee, he would put her through the recertification process before putting her back on the road. *Id.* at p. 41. And sometime in July 2013, Major Troy Goodnough and Chief Deputy John Plath spoke to Plaintiff's jail sergeant about whether Plaintiff was interested in returning to road patrol. *Id.* at p. 42. The sergeant confirmed Plaintiff's interest. *Id.*

Under a collective bargaining agreement, the Deputies had call-back rights in order of seniority for a year after the layoffs. Dkt. 10, ¶ 3. Defendant called back two Deputies within the one-year period. Dkt. 11, ¶ 94. After the period expired and the call-back rights ended, Defendant rehired another three Deputies, also in the order of their seniority. *Id.* at ¶¶ 94-95. After Defendant rehired those Deputies, Plaintiff was next in order of seniority; she was the most senior Deputy who had yet to be rehired. *Id.* at ¶ 96.

In the late summer of 2013, another Deputy position opened. Dkt. 11, ¶ 97. At that time, Plaintiff was pregnant. *Id.* at ¶ 5. She informed Major Goodnough of her pregnancy on August 9, 2013. *Id.* Instead of rehiring Plaintiff, Defendant hired Patrick Davison—an officer from an outside agency—on September 12, 2013. *Id.* at ¶ 96. That same day, Defendant posted another vacant Deputy position. *Id.* at ¶ 96. Plaintiff submitted a letter of interest and resume, but Defendant hired someone else. *Id.* at ¶104-105. During the remainder of Plaintiff's pregnancy, Defendant passed over Plaintiff twice more, hiring instead two new Deputies straight from the police academy. *Id.* at ¶105.

While Defendant was hiring for those vacant Deputy positions, Plaintiff went on light-duty at the corrections department because of her pregnancy. Dkt. 11, Ex. 1, p. 28. Later that fall, during a conversation with Union President Mike Grodi, Plaintiff states that she learned that Grodi had been a party to a conversation with now-Sheriff Malone and Major Jeff Kemp. Dkt. 10, ¶¶ 48, 53. The conversation between Grodi, Malone, and Kemp—which Defendant does not admit occurred—is alleged to have happened in September, 2013. Dkt. 11, Ex. 2, p. 14. When discussing possible candidates for road patrol, Plaintiff's name came up. Dkt. 10, ¶ 53. According to Grodi, Malone responded by saying: "what good is she going to do us?" *Id.*

After learning of this conversation and having seen multiple Deputy openings filled without being offered her position back, Plaintiff filed a complaint with the Equal Employment Opportunity Commission in January, 2014. Dkt. 11, Ex. 8.

Plaintiff alleged that Defendant had discriminated against her because she was pregnant. *Id.* Following an investigation, the EEOC determined that there was reasonable cause to believe that Defendant did not rehire Plaintiff because she was pregnant. Dkt. 11, Ex. 13. Plaintiff and Defendant were unable to reach a settlement, so Plaintiff brought this lawsuit alleging pregnancy discrimination in violation Title VII of the Civil Rights Act of 1964.

## III. Analysis

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)).

B. *Discussion*

As an initial matter, Defendant seeks to limit the scope of the lawsuit to the narrow question of whether Defendant was justified in hiring Patrick Davison instead of Plaintiff. Defendant attacks Plaintiff's version of the facts as "erroneous." Dkt. 10, pp. 10-13. Defendant further argues that under the "expected scope of investigation test" Plaintiff has not exhausted her administrative remedies for any allegations of discrimination based on the hiring of others, and that therefore this lawsuit should be restricted to considering whether Defendant engaged in discrimination in hiring Patrick Davison instead of Plaintiff. Defendant maintains that nothing relating to other hiring decisions is relevant in this case.

The "expected scope of the investigation test" has been applied to situations where a plaintiff includes in her judicial complaint new claims or theories not raised before the EEOC. Both cases Defendant cites in support of its argument involve plaintiffs who complained to the EEOC of discrimination only, but later sued in court for discrimination *and* retaliation. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004); *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002). And other cases invoking the test have involved new theories of

5

discrimination, for example when the EEOC complaint alleged discrimination on the basis of national origin and then the judicial complaint alleged discrimination on the bases of both national origin *and* race. *See, e.g.*, *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991). In contrast, Plaintiff's claim has always been a discrimination claim and has always been based on her pregnancy. *See* Dkt. 10, ¶ 11.

Moreover, as Plaintiff notes, in the supplemental document she submitted with the EEOC intake questionnaire, she referenced Defendant hiring other Deputies after Patrick Davison. Dkt. 11, Ex. 15. Thus, to the extent that the "expected scope of the investigation test" were to apply to a judicial complaint alleging more evidence of the same kind of discrimination that was alleged in the EEOC complaint, the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination would clearly include the information Plaintiff provided in the supplement to her intake questionnaire. The EEOC does not require a plaintiff's complaint to detail at length everything that happened:

### What to Include in the Formal Complaint
Your discrimination complaint must contain the following:

- Your name, address, and telephone number;
- A short description of the events that you believe were discriminatory (for example, you were terminated, demoted, harassed);

http://tinyurl.com/zgmoftf. Plaintiff's EEOC complaint demonstrates why—the facts she did include occupied almost all of the available space:

> THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
> I began working for the above named employer on October 31, 2006.  My position at present is Corrections Officer.  On or about August 9, 2013, I made my employer that I was 14 weeks pregnant.
>
> In September of 2013, I was not hired for the position of Deputy Sheriff.  A male from an outside agency was offered the position.  The Sheriff after learning of my pregnancy made the comment "What good is she going to do us?"  Further, I was the only applicant for the position made to resubmit a complete hiring packet.
>
> I can only conclude that I was not hired and subjected to different terms and conditions of employment due to my gender, female/pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Dkt. 11, Ex. 8. Her intake questionnaire, however, ran five pages. Dkt. 11, Ex. 14. And her supplement to that questionnaire ran another page and a half. Dkt. 11, Ex. 15. The test examines the scope of the investigation expected to arise out of the charge, not the scope of what is contained in the few sentences a plaintiff is able to squeeze into the formal EEOC complaint form. Plaintiff's supplement to her intake questionnaire contained information that reasonably would cause the EEOC to include in its investigation all of Defendant's hiring practices from the time Plaintiff informed Defendant that she was pregnant to the time Plaintiff gave birth. Defendant is therefore incorrect in claiming that this case is limited to the hiring of Patrick Davison.

The Court now turns to whether Defendant is entitled to summary judgment on Plaintiff's claim.

There are three ways an employee can prove pregnancy discrimination under Title VII: "She can proffer direct evidence of discrimination, present circumstantial evidence that permits an inference of discrimination, or show that both legitimate and illegitimate (discriminatory) reasons—in other words, mixed motives— motivated the adverse employment decision." *Bergman v. Baptist Healthcare Sys., Inc.*, 167 F. App'x 441, 445 (6th Cir. 2006) (quotations and citations omitted).

Neither Plaintiff nor Defendant mentions the mixed-motives method of proof. Defendant argues that Plaintiff cannot proffer direct evidence of discrimination. Dkt. 10, pp. 18-21. Plaintiff does not address this argument explicitly in her opposition brief, but emphasizes the statement "what good is she going to do us?" (which Defendant argues is not direct evidence of discrimination). Dkt. 11, pp. 22, 24. Both parties clearly discuss circumstantial evidence.  The Court will therefore briefly address Defendant's argument about direct evidence before turning to the arguments about circumstantial evidence.

  1. *Direct Evidence*

Defendant argues that Sheriff Malone's statement "what good is she going to do us?" is not direct evidence of discrimination. Dkt. 10, pp. 18-19. Defendant maintains that the statement is proof that Sheriff Malone thought Plaintiff was an unacceptable candidate for a road patrol position because she was on light-duty restrictions and therefore could not go out on road patrol. *Id.* at p. 19. That is one reasonable interpretation of the statement. But the statement also allows the inference that Sheriff Malone believed Plaintiff would not do Defendant any good because she was pregnant. Because the statement is liable to different interpretations, Defendant is correct that it cannot be considered direct evidence of discrimination.

Direct evidence in this context is "evidence [that] *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926

(6th Cir. 1999) (emphasis added). "The discrimination is proven without resort to inference: that the employee was a victim of discrimination appears plain on the face of the evidence. *Bergman v. Baptist Healthcare Sys., Inc.*, 167 F. App'x 441, 445–46 (6th Cir. 2006). Because a fact-finder would need to infer that the reason Sheriff Malone thought Plaintiff would be no good to the Department was because she was pregnant, the statement cannot be considered direct evidence. Plaintiff does not explicitly argue to the contrary.  To the extent Plaintiff relies upon Sheriff Malone's statement, however, the applicable analysis is that which applies to circumstantial evidence rather than direct evidence of discrimination.

2. *Circumstantial Evidence*

When a plaintiff seeks to prove her Title VII claim using circumstantial evidence, courts use the *McDonnell Douglas* test, which takes its name from the Supreme Court case *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the test, the plaintiff has "the initial burden" of "establishing a prima facie case" of discrimination. *Id.*, at 802. If she carries her burden, the employer can then "articulate some legitimate, non-discriminatory reason" for the difference in treatment. *Id.* If the employer articulates a reason, the plaintiff can then prove by a preponderance of the evidence that the reason is pretext for discrimination. *See id.* at 804; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

a. *Plaintiff's prima facie showing*

To establish a prima facie case of pregnancy discrimination, a plaintiff must show four things: "(1) she was pregnant, (2) she was qualified for her job, (3) she

was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Tysinger v. Police Dep't*, 463 F.3d 569, 573 (6th Cir. 2006). Defendant does not dispute that Plaintiff has satisfied the first three prongs of the test, but argues that Plaintiff cannot satisfy the fourth prong. Dkt. 10, p. 15. Thus the Court must determine whether, viewing the record in the light most favorable to Plaintiff, she has "created a genuine dispute of material fact as to the fourth prong of the *McDonnell Douglas* analysis." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1355 (2015).

In view of the evidence in the record, Plaintiff has met her burden. The fourth prong requires Plaintiff to show that Defendant knew she was pregnant when making the decision not to hire her and that the hiring of another candidate was proximate to Plaintiff's pregnancy. *See Bergman v. Baptist Healthcare Sys., Inc.*, 167 F. App'x 441, 446–47 (6th Cir. 2006) ("The fourth element of the prima facie case requires [the plaintiff] to show, at a minimum, that [the defendant] knew [the plaintiff] was pregnant when making the decision to terminate her and that the termination was proximate to her pregnancy"); *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005) ("Finally, the temporal proximity between [the plaintiff's] announcement of her pregnancy, her filing for FMLA leave, and her demotion satisfies the "nexus" requirement. [The plaintiff] has established a prima facie case of pregnancy discrimination").

Here, the evidence shows that Plaintiff informed Defendant that she was pregnant on or about August 9, 2013, that Defendant was then aware that Plaintiff

10

was seeking to be re-hired as a road patrol Deputy, and that Defendant hired Patrick Davison and three others while Plaintiff was pregnant. Dkt. 11, ¶¶ 5, 96, 104-105; Ex. 1, pp. 38-42. Defendant responds that it determined in *early* 2013 that it would not rehire Plaintiff, that it approached Davison about the position in *early* August of 2013 (which was before Plaintiff informed Defendant of her pregnancy), and that Plaintiff cannot establish that anyone with a similar light-duty restriction for a reason other than pregnancy received better treatment than Plaintiff received. Dkt. 10, pp. 14-16.

Defendant's contentions miss the mark. Defendant's proffered reason for not rehiring Plaintiff is irrelevant at the prima facie stage. Defendant's statement that it approached Davison in "early" August does not establish with certainty that this approach occurred before Plaintiff communicated that she was pregnant on August 9. And the timing of Defendant's approach of Davison might be relevant, but it is not dispositive because the actual hiring of Davison did not take place until September. Dkt. 11, ¶ 96. Moreover, although establishing that another person with a similar work restriction was treated more favorably is one way to meet the fourth prong, it is not the only way. As noted above, a temporal proximity between the employer learning that the employee is pregnant and the employer's allegedly discriminatory employment action is also sufficient to meet this element. Plaintiff has presented sufficient evidence to show temporal proximity and therefore has met her burden to establish a prima facie case.

11

There is some uncertainty in the law concerning the effect of Plaintiff's having made out a prima facie case at the summary judgment stage. The Sixth Circuit has noted that "a defendant is not entitled to judgment as a matter of law or summary judgment if a plaintiff has proven its prima facie case." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860-61 (6th Cir. 1997). This seems to suggest that the inquiry might end here for summary judgment purposes, and that the question should go to the jury. But the Sixth Circuit has also discussed whether any burden shifts back to the Plaintiff if the Defendant presents a non-discriminatory reason for its actions. The Sixth Circuit noted that '[t]o survive a motion for summary judgment, the plaintiff need not prove that the defendant's proffered rationale is pretextual, as that would be enough proof for summary judgment in favor of the plaintiff." *Whitfield v. Tennessee*, 639 F.3d 253, 260 (6th Cir. 2011). This suggests that the summary judgment analysis must include all three steps: the employee's prima facie showing, the employer's alternative reasons for its actions, and the employee's rebuttal of those reasons as pretextual. The Supreme Court seems to agree with the latter approach. In *Young v. United Parcel Serv., Inc.*, it left for remand the question of whether the plaintiff had "created a genuine issue of material fact as to whether [the defendant's] reasons for having treated [the plaintiff] less favorably than it treated . . . other nonpregnant employees were pretextual." 135 S. Ct. 1338, 1356 (2015). This Court will therefore proceed to steps two and three.

b. *Defendant's proffered non-discriminatory reasons for not rehiring Plaintiff*

Defendant argues that its decision not to rehire Plaintiff was based entirely on her prior work performance and that the decision had nothing to do with her pregnancy. Dkt. 10, pp. 16-17. In fact, Defendant argues that it made the decision not to rehire Plaintiff in early 2013, before Plaintiff even became pregnant. *Id.* at p. 14. Defendant submits that Sheriff Malone and Major Kemp discussed potential vacancies that could open within the year, and during that discussion Plaintiff's name came up. *Id.* at ¶ 20. When discussing whether they would rehire Plaintiff, Malone and Kemp purportedly reviewed Plaintiff's past performance as a Deputy, performance that included the following:

- Plaintiff had a number of disciplinary actions for her performance;
- Plaintiff at times failed to investigate crimes thoroughly and to reduce her findings to writing;
- Plaintiff failed to book into evidence a counterfeit fifty-dollar bill;
- Plaintiff failed to search sufficiently a vehicle involved in a hit-and-run accident. The mother of the driver was instructed to take the vehicle home, and found a burnt spoon and syringe that the driver had used to consume drugs. Plaintiff then went and collected the items, and lied on her report of the incident by stating that she discovered them;
- Plaintiff became argumentative with Major Kemp when Kemp asked her about whether she had searched the car, saying "who are you to say I didn't search the vehicle, you weren't there;"
- Plaintiff forgot a completed preliminary breath test on the hood of her patrol car. When she drove off, the test fell off her car and on to Interstate 75. Plaintiff had to return to I-75 to search for the test, and when she found the test it was damaged.

Dkt. 10, ¶¶ 30-31, 36-42; Dkt. 11, ¶¶ 87-88. Defendant submits that in August and September of 2013, the Department was understaffed and in need of the best

13

possible Deputies, and that Plaintiff's errors during her time as a Deputy were egregious to the point that they disqualified her in the minds of Sheriff Malone and Deputy Kemp. Dkt. 10, ¶ 21, p. 14.

Defendant also submits a second reason that it did not rehire Plaintiff. Given the understaffing Defendant faced, it needed Deputies who could go on road patrol right away. Id. at pp. 15-16. Thus, Defendant argues, it did not rehire Plaintiff because her light-duty restrictions meant that she would be unable to go on road patrol. *Id.* at p. 15.  Although Defendant does not say so explicitly, the implication is that Defendant also would not have hired or rehired anyone with a similar light-duty restriction. For example, if another candidate had a temporary impairment, such as a back injury, and could not ride in a patrol car until recovered, Defendant would not have hired that candidate.

Defendant's first proffered reason for not rehiring Plaintiff is a legitimate one. If Sheriff Malone and Major Kemp decided not to rehire Plaintiff because of her poor performance record, it would be reasonable to expect that even if Plaintiff had not been pregnant in August and September of 2013 Defendant would not have rehired her—pregnancy would have had nothing to do with the decision. Defendant's second proffered reason is also legitimate. The Sixth Circuit has noted that "nothing in Title VII compels an employer to prefer for alternative employment an employee who, because of pregnancy, is unable to perform her full range of duties." *Fields v Bolger*, 723 F2d 1216 (6th Cir. 1984). And the Supreme Court has recognized that "the second clause [of the Pregnancy Discrimination Act] could not be clearer: it

mandates that pregnant employees 'shall be treated the same for all employment related purposes' as non-pregnant employees similarly situated with respect to their ability to work." *International Union v Johnson Controls*, 499 US 187, 204-05 (1991). In other words, there is a distinction between not hiring someone because she is pregnant and not hiring someone because the effect of her pregnancy is that she cannot perform the work the job requires.

It is instructive to compare the employment decision in this case to the situation where the candidate is not pregnant, but is rather experiencing a temporary disability such as a back injury.  If Defendant were willing, for example, to hire someone with a temporary back injury, but not willing to hire Plaintiff when she was pregnant, that would suggest that Defendant's reason for not hiring Plaintiff was *because she was pregnant*, and not because of her light-duty restriction. Likewise, if Defendant was basing its decision not to rehire Plaintiff *on the effects of her pregnancy on her ability to perform the required work*, one would expect Defendant also to turn down someone who could not go on patrol because of a temporary back injury. Defendant submits that it falls into the latter category.

Defendant has proffered legitimate reasons for not rehiring Plaintiff, so the Court must now determine whether Plaintiff has "created a genuine issue of material fact as to whether [Defendant's] reasons . . . were pretextual." *Young*, 135 S. Ct. at 1356.

### c. Whether Defendant's proffered reasons are pretextual

"A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Tysinger*, 463 at 576. In response to Defendant's first non-discriminatory rationale (Plaintiff's prior poor work performance), Plaintiff submits that her performance record is much better than Defendant represents and that Defendant rehired other Deputies who had made similarly egregious mistakes. Specifically, Plaintiff contends that:

*Plaintiff's Performance*

- Plaintiff's troubles with report writing came when she was assigned to the busiest district that Defendant services. While she was there, Plaintiff wrote 228 incident reports, while other Deputies wrote between 60 and 65 reports in the same time period;

- In a performance evaluation, Major Goodnough gave Plaintiff 17 out of 18 possible points in the "report writing" category and 76 of 87 total possible points;

- In that same evaluation, Plaintiff ranked 2nd in the top 10% of Officers submitting complaints to the Prosecutor, 2nd in the top 10% of Officers submitting Felonies and 3rd in the top 10% of those Officers submitting Misdemeanors;

- Plaintiff's last disciplinary action was in 2008, years before Defendant's decision not to rehire her;

- Plaintiff earned a perfect score in the evaluation of her performance from October 31, 2008 to November 29, 2009.

Dkt. 11, ¶¶ 76-83, 91-92.

*Performance of others whom Defendant rehired*

- Defendant rehired Rico Galamberti, who worked for the Washtenaw County Sheriff's Department during the layoff and was asked by that Sheriff's Department to resign because he used excessive force.

▪ Defendant rehired Jeffrey Hooper, whom Defendant had previously suspended because he had alcohol in his system while he was on road patrol.

Dkt. 11, ¶¶ 107-108.

Defendant argues that the prior histories of other rehired Deputies are irrelevant. Dkt. 15, ¶¶ 107-108. That is not true; if Defendant overlooked similar, or even worse, records of poor performance when rehiring other former Deputies, that conduct permits an inference that Plaintiff's prior performance record is pretext and Plaintiff's pregnancy motivated Defendant's decision not to rehire her.

In response to Defendant's second argument (the need for Deputies who could go on road duty), Plaintiff contends that in the past Defendant has provided accommodations to other deputies who had light-duty restrictions similar to her restrictions. Dkt. 11, p. 21. She supports this statement by citing her own declaration:

> 6. The Monroe County Sheriff's Department has provided accommodations to other deputies that had light duty restrictions similar to the restrictions that I was on in August 2013. Such deputies were generally placed in clerical positions.

Dkt. 11, Ex. 5, ¶ 6. This statement does not address Defendant's suggestion that, at the time Plaintiff sought a position, there was a need for road patrol Deputies, not clerical Deputies. But it is proof that Defendant has previously accommodated Deputies even when they were on light-duty restriction as Plaintiff was. Though it does not carry great weight because Plaintiff has provided no specific details as to

17

the who, what, and when of these alleged accommodations, it does suggest that Defendant had discretion to hire deputies on light-duty restriction, thus slightly undermining Defendant's rationale that Plaintiff's pregnancy made her unqualified for the position.

What carries more weight is the alleged statement Sheriff Malone made to Major Kemp during a discussion about Plaintiff. According to Union President Mike Grodi, he was present for a conversation between Malone and Kemp where Malone said "what good is she going to do us?" when Plaintiff's name came up as a possible candidate for a road patrol position. Dkt. 10, ¶53. This statement could be interpreted one of two ways: (1) that Plaintiff was no good to Defendant because she was pregnant (which would be impermissible discrimination) or (2) that Plaintiff was no good to Defendant because of the effect her pregnancy had on her ability to perform the required work (which, as explained above, would be permissible). Grodi interpreted the statement to mean that Plaintiff would not do the Department any good because she was on light-duty restrictions: in line with the second of the two interpretations. *Id.* at ¶ 55. However, Sheriff Malone denies making the statement, *id.* at ¶ 57, and both Malone and Kemp deny that the conversation ever happened. *Id.* These denials create issues of fact as to whether the conversation took place and whether Malone made the statement.  To resolve these issues a jury must make a credibility determination between Grodi on one hand and Malone and Kemp on the other. If a jury resolves this question in Plaintiff's favor, it might reasonably draw

an adverse inference from Malone's and Kemp's denials that would suggest that the statement showed an intent to discriminate.

Finally, there is the matter of the collective bargaining agreement and call-back rights. Plaintiff emphasizes that Defendant continued to call back Deputies in their order of seniority after the call-back period expired. Dkt. 11, p. 22. Defendant argues that the decision to rehire Deputies after the call-back period expired is not relevant because none of the Deputies had call-back rights and neither did Plaintiff. Dkt. 10, pp. 13-14. Although it is true that the former Deputies had no rights to their old jobs once the call-back period expired, Defendant's practice of continuing to rehire Deputies in the order of their seniority suggests an informal policy to rehire in order of seniority, as if the call-back period were still in effect. When the time came that Plaintiff was next on the list given her seniority, she was pregnant and Defendant did not rehire her. This does not necessarily weigh in Plaintiff's favor— after all, Defendant might have broken its habit for either of the non-discriminatory rationales provided in this lawsuit—but it could weigh in her favor. A jury could reasonably interpret this series of events as an informal policy that Defendant abandoned because Plaintiff was pregnant.

Taken together, these facts create a genuine issue of material fact concerning whether Defendant's proffered reasons actually motivated its decision not to rehire Plaintiff. To be sure, a jury could find that Plaintiff's performance was subpar; that her positive reviews came from Major Goodnough, who was not in charge of hiring Deputies; that she did not get along with Major Kemp, who played a role in hiring

Deputies; that her interactions with Kemp and her prior performance led Sheriff Malone and Kemp to decide not to rehire her months before she informed them that she was pregnant; that there was a real need for Deputies who could serve immediately on road patrol; that even if Plaintiff had performed well in the past, her pregnancy prevented her from immediately performing the functions of a road patrol Deputy; that even absent her performance issues Defendant would not have rehired her because she could not go on road duty; and that Defendant would not have hired anyone who was incapable of performing road duty. But the facts before the Court also allow a jury to find the opposite: that Defendant had an informal policy of rehiring Deputies in the order of their seniority; that Defendant abandoned that policy when it came time to rehire Plaintiff because she was pregnant; that but for Plaintiff's pregnancy Defendant would have overlooked Plaintiff's previous performance problems and rehired her; that Malone and Kemp did have a conversation with Union President Grodi, Malone did make the statement "what good is she going to do us?," and the reason Malone thought Plaintiff would not do Defendant any good was because she was pregnant and not because she was unable to go on road patrol; and that Defendant might have hired someone who had a light-duty restriction from a cause other than pregnancy.

The evidence of record allows a jury to draw inferences in favor of either party on these questions of fact. Consequently, Defendant is not entitled to summary judgment, and this dispute must go to a jury.

20

## IV. Conclusion

Because genuine issues of material fact exist concerning whether there is a nexus between Plaintiff's pregnancy and Defendant's decision not to rehire her and whether Defendant's proffered reasons for not rehiring her were pretextual, Defendant's Motion for Summary Judgment is **DENIED**.

**SO ORDERED.**

Dated:  September 27, 2016                    s/Terrence G. Berg
                                              TERRENCE G. BERG
                                              UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on September 27, 2016, using the CM/ECF system, which will send notification to all parties.

                                              s/A. Chubb
                                              Case Manager

21